UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NICHOLAS BRODIGAN,<br><br>Defendant. | Case No. 2:17-cr-00103-KJD-PAL<br><br>**REPORT OF FINDINGS AND RECOMMENDATION**<br><br>(Motion to Dismiss – ECF No. 98) |
|---|---|

Before the court is defendant Nicholas Brodigan's ("Brodigan") Motion to Dismiss Counts Three, Five, and Seven of the Indictment (ECF No. 98). This Motion was referred to the court for a report of findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4 of the Local Rules of Practice. The court has reviewed the Motion, the government's Response (ECF No. 105), and Brodigan's Reply (ECF No. 123).

## **BACKGROUND**

**I.    THE INDICTMENT**

Mr. Brodigan is charged in an Indictment (ECF No. 1) returned April 4, 2017, along with co-defendants Justin Castro and Victoria Commisso.[1] The Indictment arises out of three alleged robberies that occurred between March 13 and March 19, 2017. The Indictment alleges that on March 13th, defendants Brodigan and Castro entered the Lowe's Home Improvement store on N. Nellis Boulevard in Las Vegas. Castro was armed with a semi-automatic handgun openly carried in a holster on his hip. Castro and Brodigan went to the tool department, took merchandise, walked past all points of sale and towards the store's exit. An employee confronted them, and Castro placed his hand on his holstered gun telling the clerk to "move out of the way or get shot." Castro and Brodigan then fled.

---

[1] Mr. Castro pleaded guilty and has been sentenced.

On March 19th, Castro and Brodigan allegedly walked into a Home Depot store located on S. Lamb Boulevard in Las Vegas. Castro was armed with a semiautomatic handgun openly carried in a holster on his hip. Castro and Brodigan went to the tool department, selected merchandise, and proceeded to walk out of the store. While doing so, Castro placed his hand around the handle of his holstered firearm. An employee attempted to prevent Castro and Brodigan from fleeing but stopped when the employee realized Castro was armed. Castro and Brodigan allegedly fled in a vehicle driven by Commisso.

Thirty minutes after the second robbery, Commisso and Castro allegedly entered a Home Depot on S. Pecos Road in Las Vegas. Castro was again armed with a semi-automatic handgun openly carried on his hip. Commisso and Castro went directly to the tool department, selected merchandise, and walked toward the exit. A store employee again attempted to stop the defendants from leaving without paying for the merchandise. Castro pulled his firearm out of its holster, pointed it at the employee, and told him to "back off." Commisso and Castro left the store and entered a Hyundai Brodigan had parked close to the entrance. Brodigan then drove all three defendants away from the store.

## II. CHARGES AND STATUTES RELEVANT TO THE CURRENT MOTION

The Indictment charges Mr. Brodigan in seven counts:

- Count One – Conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. §§ 1951 and 2;
- Counts Two, Four, and Six – Interference with commerce by robbery, aiding and abetting in violation of 18 U.S.C. §§ 1951 and 2; and
- Counts Three, Five, and Seven – Use of a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2.

Brodigan's Motion contends that Counts Three, Five, and Seven (the "§ 924(c) Counts") must be dismissed because the predicate crimes alleged in Counts Two, Four, and Six are not crimes of violence within the meaning of 18 U.S.C. § 924(c)(3). The § 924(c) Counts each allege use and carry of a firearm in relation to a crime of violence pursuant to 18 U.S.C. § 924(c) and § 2.[2] Section 924(c) defines the term "crime of violence" as a felony offense that:

---

[2] 18 U.S.C. § 2 addresses aiding and abetting.

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Subsection (A) is often referred to as the "force clause" or the "elements clause," and subsection (B) is known as the "residual clause" or the "risk-of-force clause."

### III.    THE PARTIES' POSITIONS

#### A. Brodigan's Motion

Brodigan's motion contends the 924(c) Counts must be dismissed because the underlying robbery offenses charged are not a "crime of violence" within the meaning of 18 U.S.C. § 924(c)(3). Relying on the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015) ("*Johnson II*"), and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), Brodigan asserts that § 924(c)'s residual clause is void for vagueness. In *Johnson II*, the Supreme Court held that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), was void for vagueness because it left uncertainty about how to estimate the risk posed by a crime and how much risk it takes for a crime to qualify as a violent felony. In *Dimaya*, the Supreme Court held that the residual clause of 18 U.S.C. § 16(b) suffered from the same deficits as the ACCA's residual clause. Brodigan asserts that § 924(c)'s residual clause, which has language virtually indistinguishable from the ACCA and § 16(b), is unconstitutionally vague for the same reasons.

Mr. Brodigan also argues that Hobbs Act robbery does not have as an element the intentional use, attempted use, or threatened use of violent physical force. In *Johnson v. United States*, 559 U.S. 133 (2010), ("*Johnson I*"), the Supreme Court held that the "physical force" required to commit a predicate offense must be "'*violent force*' or 'force capable of causing physical pain or injury to another person'." *Id*. at 140 (analyzing the ACCA's "force clause") (emphasis added). Citing *United States v. Castleman*, 572 U.S. 157, 134 S. Ct. 1405, 1412 (2013), Brodigan asserts that minor uses of force may not constitute violent force. Mot. at 8–9. Hobbs Act robbery encompasses conduct that places a person in "fear of injury, immediate or future, to his person or property." 18 U.S.C. § 1951(b)(1). A fear of injury constitutes a mere threat of injury, which does not require the use or threatened use of violent force.

1  Additionally, Brodigan claims a defendant can be convicted for Hobbs Act robbery by using *de minimis* force or for using force recklessly. Mr. Brodigan maintains the added element of force or fear separates common-law robbery from common-law larceny. Treatises on criminal law suggest that the use of force "includes uses of mere de minimis force." Mot. at 11 (citing 3 Wayne LaFave, Substantive Criminal Law § 20.3(d) (2d ed., Oct. 2016 Update); 4 Wharton's Criminal Law § 465 (15th ed.); 77 Corpus Juris Secundum, John A. Glenn, et al., Robbery § 23 (Dec. 2016 Update) (stating that the "particular degree of violence is immaterial" to the force element of robbery so long as it is sufficient to overcome the victim's resistance and transfer property to the robber). The Hobbs Act was modeled from New York's definition of robbery, which exposes "defendants to liability even if their use of force was de minimis." Mot. at 12–15. Furthermore, similarly worded federal robbery statutes do not require violent physical force. *Id.* at 16 (citing case law discussing 18 U.S.C. § 2112 (robbery of government property), § 2113 (bank robbery), and § 2114 (robbery of U.S. postal worker)).

For these reasons, Mr. Brodigan argues that his Hobbs robbery charges do not meet § 924(c)'s "crime of violence" definition, and his 924(c) Counts must therefore be dismissed.

**B. The Government's Response**

In its Response (ECF No. 105), the government argues that Hobbs Act robbery plainly qualifies as a predicate crime of violence under § 924(c)'s force clause. The government points out that every federal court of appeals to have considered the question post-*Johnson II* has held that Hobbs Act robbery qualifies as a crime of violence under § 924(c) based on its elements. *Id.* at 8–9 (collecting cases).

Brodigan's assertion that Hobbs Act robbery is not a crime of violence because different robbery statutes do not qualify as crimes of violence because elements of those statutes require only the use of slight force lacks merit. The motion cites no case or example where a Hobbs Act robbery was committed through de minimis force or a threat of de minimis force; thus, Brodigan has not presented a realistic probability that the statute encompasses conduct that falls outside the generic robbery definition. Resp. at 9 (citing *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013)).

///

Additionally, the Ninth Circuit has explicitly rejected Brodigan's argument that Hobbs Act robbery does not qualify as a crime of violence because it encompasses conduct that places a person in fear of injury. *See United States v. Howard*, 650 Fed. App'x. 466 (9th Cir. May 23, 2016, amended Jun. 24, 2016) (unpublished). The *Howard* court held that "Hobbs Act robbery by means of 'fear of injury' also qualifies as crime of violence." *Id*. at 468.

Because Mr. Brodigan has not met his burden for dismissal of the § 924(c) Counts, the court should deny his Motion.

## DISCUSSION

I.  **LEGAL STANDARDS**

   A. **Rule 12 of the Federal Rules of Civil Procedure**[3]

Pursuant to Rule 12, a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Rule 12(b)(3) specifies the motions which must be made before trial. A pretrial motion to dismiss a criminal case is appropriate when it involves questions of law rather than fact. *United States v. Schulman*, 817 F.2d 1355, 1358 (9th Cir. 1987).

In ruling on a pretrial motion to dismiss, the district court is "bound by the four corners of the indictment." *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014); *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) ("On a motion to dismiss an indictment for failure to state an offense the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged."). The court should not consider evidence that does not appear on the face of the indictment. *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996)). Thus, a defendant is not entitled to a pre-trial evidentiary hearing to obtain a preview of the government's evidence and an opportunity to cross-examine its witnesses. *Id.* ("A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence.").

In determining whether a cognizable offense has been charged, the court does not consider whether the government can *prove* its case, only whether accepting the facts as alleged in the indictment as true, a crime has been alleged. *United States v. Milovanovic*, 678 F.3d 713, 717 (9th

---

[3] All references to a "Rule" or the "Rules" in this Order refer to the Federal Rules of Criminal Procedure.

Cir. 2012). Rule 12 motions cannot be used to determine "general issues of guilt or innocence," which "helps ensure that the respective provinces of the judge and jury are respected." *Boren*, 278 F.3d at 914. A defendant may not challenge a facially-sufficient indictment on the ground that the allegations are not supported by adequate evidence. *Jensen*, 93 F.3d at 669. However, dismissal of a criminal charge is appropriate when: (1) the indictment fails to recite an essential element of the charged offense," *United States v. Ezeta*, 752 F.3d 1182, 1184 (9th Cir. 2014); or (2) the charge is based on "a statute that is unconstitutional on its face or as applied." *United States v. Mayer*, 503 F.3d 740, 747 (9th Cir. 2007).

### B. The Categorical Approach

To decide this Motion, the court must determine whether the predicate offense charged—Hobbs Act robbery—qualifies as a crime of violence under 18 U.S.C. § 924(c)(3). To make such determinations, courts employ the three-step "categorical approach" first announced in *Taylor v. United States*, 495 U.S. 575 (1990). *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (applying the categorical approach in determining whether a prior conviction qualified as a crime of violence for purposes of the 15-year mandatory minimum sentence of a defendant convicted of felon in possession of a firearm who had three prior state or federal convictions for a "violent felony" including "burglary arson or extortion.").

In *Taylor*, the defendant pleaded guilty to possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). The sentencing judge determined that Taylor's prior state convictions for second-degree burglary qualified as crimes of violence for purposes of the sentence enhancement provisions of the ACCA. Taylor's guilty plea was conditioned on his right to appeal whether his burglary convictions qualified as crimes of violence. The Supreme Court reversed the Eighth Circuit's holding that, for sentence enhancement purposes under the ACCA, the term "burglary" in § 924(e)(2)(B)(ii) meant "burglary" however a state chose to define it. 495 U.S. at 579. The Supreme Court held that the term "burglary" in § 924(e) "must have some uniform definition independent of labels employed by various States' criminal code." *Id* at 592. Examining the statute's legislative history, the high court concluded that "a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its

6

exact definition or label, having the basic elements of unlawful or unprivileged entry into or remaining in, a building or structure with intent to commit a crime." *Id* at 598. The Supreme Court found it impermissible that a crime "sometimes count towards enhancement and sometimes not, depending on the facts of the case." *Id.* at 601. *Taylor* therefore established the test applying this principle to offenses where state statutes vary in definition and requiring the trial court "to look only to the fact of conviction and the statutory definition of the prior offense." *Id.* at 602.

The categorical approach directs trial courts to ignore the particular facts of a case and determine whether the statutory elements of a crime sufficiently match the elements of the crime's generic definition. *Mathis* at 2248 (citing *Taylor*, 495 U.S. at 600–01); *United States v. Werle*, 815 F.3d 614, 618 (9th Cir. 2016) (noting that a "generic crime" is "the offense as commonly understood"). A crime is not a categorical match qualifying as a "crime of violence" if the charging statute punishes "a broader swath of conduct" than the conduct covered by the generic definition of the crime. *Descamps v. United States*, 570 U.S. 254, 258 (2013). Federal courts have utilized the "categorical approach" for crime-of-violence determinations in several other contexts, including sentencing guideline analysis and deportation proceedings. *See*, *e.g.*, *Descamps*, 570 U.S. at 257 (applying categorical approach to ACCA); *Leocal v. Ashcroft*, 543 U.S. 1, 10 (2004) (applying categorical approach to "crime of violence" definition stated in 18 U.S.C. § 16, which is incorporated into the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*); *United States v. Piccolo*, 441 F.3d 1084, 1086–87 (9th Cir. 2006) (applying categorical approach to "crime of violence" definition found in U.S.S.G. § 4B1.2)).

1. Step One: Identifying the Elements of a Crime

At step one of the categorical approach, the court must "identify the elements of the statute necessary to secure a conviction," *Uppal v. Holder*, 605 F.3d 712, 714 (9th Cir. 2010), and compare the elements of the offense to the elements of the generic offense defined by federal law. *Almanza-Arenas v. Lynch*, 815 F.3d 469, 475 (9th Cir. 2016) (en banc). To do this, courts look only to the statutory definitions of an offense, *i.e.*, the "elements," not to the particular underlying facts satisfying a statutory element, *i.e.*, the "means." *Descamps*, 570 U.S. at 261. Means are the "various factual ways of committing some component of the offense," for which a jury need not

7

make a specific finding to convict. *Mathis*, 136 S. Ct. at 2249; *see also Descamps*, 570 U.S. at 270 (describing "means" as "legally extraneous circumstances"). The Supreme Court has instructed that distinguishing between elements and facts is critical: "'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction'." *Mathis*, 136 S. Ct. at 2248 (internal bracketing and citation omitted).

To identify the elements of a criminal statute, courts examine the text of the statute and case law interpreting and applying the statute. *Id*. at 2256. If statutory alternatives carry different punishments, "they must be elements." *Mathis*, 136 S. Ct. at 2256 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). Courts also look to model jury instructions. *Almanza-Arenas*, 815 F.3d at 480 (citing *Chavez-Solis v. Lynch*, 803 F.3d 1004, 1013 (9th Cir. 2015) (finding that "pattern jury instructions are a useful tool" in assessing statutes). If these sources fail to provide clear answers, courts may look at "the record of a prior conviction" itself for the "sole and limited purpose" of determining whether the listed items are elements of the crime. *Mathis*, 136 S. Ct. at 2256–57 (quoting *Rendon v. Holder*, 782 F.3d 466, 473–74 (9th Cir. 2015) (Kozinki, J., dissenting from denial of reh'g en banc)). Record documents such as an indictment or jury instructions may show a single umbrella term or state all the possible means of committing the crime, therefore, demonstrating that the statute contains an indivisible list of means. *Id*. at 2257. Conversely, an indictment or jury instructions might reference one alternative element and exclude all others, therefore, showing that the statute contains a list of elements. *Id*. Thus, *Mathis* instructs that courts may use extra-statutory sources to confirm the elements of the charging statute. *Id*.; *see also Almanza-Arenas*, 815 F.3d at 478; *Ramirez*, 810 F.3d at 1135.

Once a court determines the elements of the current charge or prior conviction, it compares the offense's elements to the elements of the generic offense to see if they are a categorical match. *Almanza-Arenas*, 815 F.3d at 476. The underlying crime is a categorical match if "its *elements* are the same as, or narrower than, those of the generic offense." *Mathis*, 136 S. Ct. at 2248. When a statute provides alternative means as various factual ways to satisfy one element of an offense, the court "has no call to decide which of the statutory alternatives was at issue." *Id.* at 2249, 2256. If the elements of a criminal offense cover "any more conduct than the generic offense," the

offense is not a predicate for a § 924(c) charge, "even if the defendant's actual conduct (*i.e.*, the facts of the crime) fits within the generic offense's boundaries." *Id.* at 2248. "Under the categorical approach, the crime-of-violence determination 'functions as an on-off switch': An offense qualifies as a crime of violence 'in all cases or in none'." *United States v. Dominguez-Maroyoqui*, 748 F.3d 918, 920 (9th Cir. 2014) (quoting *Descamps*, 570 U.S. at 268) (internal bracketing omitted).

### 2. Step Two: Determining Whether the Criminal Statute is Divisible

When a statute is "overbroad" because it criminalizes more conduct than the generic offense, the court proceeds to step two to decide whether the statute is "divisible" or "indivisible." *Almanza-Arenas*, 815 F.3d at 476. In other words, the court determines whether the statute has "multiple, alternative elements, and so effectively creates 'several different crimes'." *Id.* (quoting *Descamps*, 570 U.S. at 263–64). Divisible statutes "contain multiple, alternative *elements* of functionally separate crimes," but indivisible statutes "contain multiple, alternative *means* of committing the crime. *Rendon v. Holder*, 764 F.3d 1077, 1085 (9th Cir. 2014) (citing *Descamps*, 570 U.S. at 264 n.2); *United States v. Cabrera-Gutierrez*, 756 F.3d 1125, 1137 n.16 (9th Cir. 2014) ("[W]hat must be divisible are the elements of the crime, not the mode or means of proving an element."). If the statute has a "'single, indivisible set of elements' with different means of committing one crime, then it is indivisible," and the inquiry ends with a finding that there is no categorical match to the generic federal offense. *Almanza-Arenas*, 815 F.3d at 476 (quoting *Descamps*, 570 U.S. at 265). However, if the statute has alternative elements stating multiple crimes, it is divisible, and the court applies the modified categorical approach at step three. *Id.* (quoting *Lopez-Valencia v. Lynch*, 798 F.3d 863, 867–68 (9th Cir. 2015)).

### 3. Step Three: the Modified Categorical Approach

Under the modified categorical approach, the court takes a deeper look at the record documents to determine the specific crime with which the defendant was charged or convicted. *Mathis*, 136 S. Ct. at 2249; *United States v. Benally*, 843 F.3d 350, 352 (9th Cir. 2016) (citing *Descamps*, 570 U.S. at 257–58). The record documents, sometimes referred to as the "*Shepard* documents," may include such materials as an indictment, jury instructions, plea colloquy, or a

plea agreement. *Descamps*, 570 U.S. at 262–63 (examining *Shepard v. United States*, 544 U.S. 13 (2005)). By reviewing the record documents, a court can discover what the prosecutor includes as elements of a crime and what elements must either be proved to the jury or plead as part of a guilty plea. *Almanza-Arenas*, 815 F.3d at 479. This is because a "prosecutor charging a violation of a divisible statute must generally select the relevant element from its list of alternatives." *Descamps*, 570 U.S. at 272 (citation omitted). "The modified approach thus acts not as an exception, but instead as a tool" for the court to identify the crime actually charged from the alternatives so that it can be compared to the generic offense. *Id.* at 263; *Mathis*, 136 S. Ct. at 2253.

### C. The Intent and Physical Force Requirements for § 924(c) Crimes of Violence

For an offense to be a crime of violence under § 924(c)(3), the offense must be a categorical match, require a higher mens rea than accidental or negligent conduct, and involve "physical force." In *Leocal*, the Supreme Court determined that both § 16(a) and § 16(b) require a higher mens rea greater than "merely accidental or negligent conduct." 543 U.S. at 11. The Ninth Circuit has uniformly applied a mens rea requirement to crime of violence determinations, including those under § 924(c)(3). *See, e.g.*, *Benally*, 843 F.3d at 354 (holding that "use" of physical force required by § 924(c)(3)(A)'s force clause must be intentional, not just reckless or negligent).[4]

The term "physical force" used in § 924(c)(3) has specialized meaning. In *Johnson I*, the Supreme Court held that the term "physical force" in the ACCA's force clause, 18 U.S.C. § 924(e)(2)(B)(i), requires "*violent* force—that is, force capable of causing physical pain or injury to another person." 559 U.S. at 140. However, *Johnson I* did not require a specific amount of force to satisfy the physical force requirement. *See Castleman*, 134 S. Ct. at 1417 (Scalia, J., concurring in part and concurring in judgment) (rejecting argument that *Johnson I* "requires force capable of inflicting 'serious' bodily injury," as opposed to "force capable of causing physical pain or injury, serious or otherwise").

Recent Ninth Circuit opinions have applied *Johnson I*'s physical force requirement to

---

[4] *See also United States v. Dixon*, 805 F.3d 1193, 1197 (9th Cir. 2015) (noting that the ACCA's force clause requires intentional force); *United States v. Narvaez-Gomez*, 489 F.3d 970, 976 (9th Cir. 2007) (extending the heightened mens rea requirement to U.S.S.G. § 2L1.2); *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006) (holding that recklessness and gross negligence are not sufficient mens rea to establish a crime of violence under § 16(a)'s force clause) (en banc).

crime of violence determinations under the ACCA, INA, and federal sentencing guidelines.[5] Although the Ninth Circuit has not specifically extended the *Johnson I* definition of "physical force" to § 924(c)(3), a number of district courts have done so when analyzing § 924(c)(3)(A)'s force clause. *See*, *e.g.*, *United States v. Bell*, 158 F. Supp. 3d 906, 912 (N.D. Cal. 2016) (collecting cases). Both the force clause and the residual clause of § 924(c)(3) define a crime of violence to include "*physical force* against the person or property of another." 18 U.S.C. § 924(c)(3)(A), (B) (emphasis added). Therefore, it follows that the use of physical force or the substantial risk of using physical force required by § 924(c)(3) is also violent force. *Cf. Leocal*, 543 U.S. at 11 (finding that the ordinary meaning of "crime of violence," combined with the statutory "emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of violent, active crimes").

The court will therefore apply the specialized physical force and intent requirements in its analysis of the whether the underlying charges meet § 924(c)(3)'s crime of violence definition.

**II.   ANALYSIS OF THE UNDERLYING CHARGES: HOBBS ACT ROBBERY**

The government's Response (ECF No. 105) states that it is relying on § 924(c)'s force clause, not the residual clause, to show that Hobbs Act robbery qualifies as a predicate crime of violence. For the reasons explained, the court finds that Hobbs Act robbery is categorically a crime of violence under the force clause. Accordingly, the court need not decide whether the residual clause is unconstitutionally vague. *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case."); *United States v. Watson*, 881 F.3d 782, 784 (9th Cir.) (holding that § 924(c)'s residual clause did not need to be addressed because the relevant offense is a crime of violence under the force clause), *cert. denied*, 139 S. Ct. 203 (2018).[6]

---

[5] *See*, *e.g.*, *United States v. Parnell*, 818 F.3d 974, 979 (9th Cir. 2016) (conviction for armed robbery under Massachusetts law criminalizing any force however slight did not qualify as a violent felony under the ACCA's force clause because the degree of force was insufficient under *Johnson I*); *Werle*, 815 F.3d at 621–22 (conviction did not qualify as a violent felony under the ACCA's force clause because the Washington riot statute did not require the level of force defined in *Johnson I*); *Dominguez-Maroyoqui*, 748 F.3d at 920–21 (discussing U.S.S.G. § 2L1.2); *Rodriguez-Castellon v. Holder*, 733 F.3d 847, 854 (9th Cir. 2013) (addressing 18 U.S.C. § 16(a)).

[6] In a recent post-*Dimaya* opinion, the Ninth Circuit noted that the "Supreme Court has not recognized that

11

**A. Hobbs Act Robbery is a Categorical Match to the Generic Robbery Definition**

Under the categorical approach, the court must first identify the elements of the robbery offenses, which are charged under 18 U.S.C. § 1951. The Hobbs Act provides in relevant part:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both. …

18 U.S.C. § 1951(a).

Notably, although the Motion quotes § 1951's substantive provision and definition of robbery, it does not specifically identify the elements of the offense or acknowledge that the Hobbs Act creates multiple crimes other than robbery. The government notes that Hobbs Act robbery is divisible from other criminal acts defined in the statute. Resp. (ECF No. 105) at 7 n.4 (citing *United States v. Mendez*, 992 F.2d 1488, 1490 (9th Cir. 1993)). Courts have concluded that the Hobbs Act creates "six functionally separate crimes": (1) interference with commerce by robbery; (2) interference with commerce by extortion; (3) attempt to interfere with commerce by robbery; (4) attempt to interfere with commerce by extortion; (5) conspiracy to interfere with commerce by robbery; and (6) conspiracy to interfere with commerce by extortion. *United States v. Smith*, 215 F. Supp. 3d 1026, 1033 (D. Nev. 2016). Brodigan's Motion only addresses Hobbs Act robbery. Since the Indictment (ECF No. 1) specifically charges him with interference with interstate commerce by robbery as predicate § 924(c) offenses, the court will only compare the robbery offense's elements with § 924(c)'s force clause.

A Hobbs Act robbery violation is comprised of two basic elements: the defendant either committed or attempted to commit, and a nexus between the defendant's acts and interstate commerce. *United States v. Rodriguez*, 360 F.3d 949, 958 (9th Cir. 2004) (citing *United States v. Woodruff*, 122 F.3d 1185, 1185 (9th Cir. 1997)); *see also Stirone v. United States*, 361 U.S. 212, 218 (1960). The Hobbs Act defines "robbery" as

---

§ 924(c)'s residual clause is void for vagueness in violation of the Fifth Amendment." *United States v. Blackstone*, 903 F.3d 1020, 1028 (9th Cir. 2018) (declining to reach the merits of a time-barred, uncertified argument that Hobbs Act robbery is not a "crime of violence" under § 924(c) based on *Johnson II*).

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, *by means of actual or threatened force, or violence, or fear of injury*, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

18 U.S.C. § 1951(b)(1) (emphasis added). Incorporating the statute's definition of robbery, the Ninth Circuit's model jury instructions require the government to prove three elements in a Hobbs Act robbery prosecution: (1) the defendant induced the victim to part with property by the wrongful use of actual or threatened force, violence, or fear; (2) the defendant acted with the intent to obtain property; and (3) commerce from one state to another was affected in some way. *See* 9th Cir. Model Crim. Jury Instructions, 8.143A Hobbs Act – Robbery or Attempted Robbery (added Sept. 2016, modified Dec. 2016); *see also Almanza-Arenas*, 815 F.3d at 480.

After identifying the elements of Hobbs Act robbery, the court compares those elements to the generic offense's elements to see if they are a categorical match. *Almanza-Arenas*, 815 F.3d at 476. The generic federal definition of "robbery" is "aggravated larceny, containing at least the elements of misappropriation of property under circumstances involving immediate danger to the person." *United States v. Velasquez-Bosque*, 601 F.3d 955, 958 (9th Cir. 2010) (quotation omitted).

The court finds that the Hobbs Act definition of robbery is a categorical match to the generic robbery definition as it reflects a misappropriation of property—"the unlawful taking or obtaining of personal property"—under circumstances involving immediate danger to the person—"from the person or in the presence of another, against his will, *by means of actual or threatened force, or violence, or fear of injury*…." 18 U.S.C. § 1951(b)(1) (emphasis added); *see also United States v. Nedley*, 255 F.2d 350 (3d Cir. 1958) (explaining that the definition of robbery stated in the Hobbs Act "is in complete accord with settled construction of common law robbery"). Accordingly, the court concludes that the elements of Hobbs Act robbery are a categorical match to the generic definition.

**B. Hobbs Act Robbery Requires that a Defendant Intentionally Use Violent Physical Force**

To constitute a crime of violence under § 924(c)'s force clause, Hobbs Act robbery must have "as an element the use, attempted use, or threatened use of physical force against the person

or property of another ...." 18 U.S.C. § 924(c)(3)(A). Mr. Brodigan argues that Hobbs Act robbery does not have as an element the intentional use, attempted use, or threatened use of violent physical force. The court disagrees.

Directly addressing the intent element, Ninth Circuit case law and model jury instructions demonstrate that the government is required to prove that "the defendant acted with the intent to obtain property." *See Du Bo*, 186 F.3d at 1179 ("Although not stated in the Hobbs Act itself, criminal intent—acting 'knowingly or willingly'—is an implied and necessary element that the government must prove for a Hobbs Act conviction.") (citing *United States v. Soriano*, 880 F.2d 192, 198 (9th Cir. 1989)); 9th Cir. Model Crim. Jury Instructions, 8.143A Hobbs Act – Robbery or Attempted Robbery. Thus, Brodigan has not established that Hobbs Act robbery encompasses reckless or negligent conduct.

Addressing the amount or level of force required, the Ninth Circuit has stated in dicta that Hobbs Act robbery "indisputably qualifies as a crime of violence" under § 924(c). *Mendez*, 992 F.2d at 1491; *Smith*, 215 F. Supp. 3d at 1031–32 ("In dicta, the [*Mendez*] court also noted that robbery 'indisputably' qualifies as a crime of violence under the force clause."). Although the decision was unpublished, the Ninth Circuit recently confirmed that Hobbs Act robbery qualifies as a crime of violence under § 924(c). *United States v. Howard*, 650 Fed. App'x 466, 468 (9th Cir. May 23, 2016, amended Jun. 24, 2016) (rejecting assertion that Hobbs Act robbery could be accomplished by putting someone in "fear of injury" and, thus, is not a categorical match under § 924(c)'s force clause) (unpublished). In *Howard*, the court noted that the defendant's arguments regarding intimidation were unpersuasive and foreclosed by *United States v. Selfa*, 918 F.2d 749 (9th Cir. 1990). 650 Fed. App'x at 468.

*Selfa* held that the federal bank robbery statute, 18 U.S.C. § 2113(a), which is analogous to Hobbs Act robbery, may be violated by "force and violence, or by *intimidation*"[7] and therefore qualifies as a crime of violence under the sentencing guidelines. 918 F.2d at 751 (addressing a charge of unarmed bank robbery); *see also United States v. Wright*, 215 F.3d 1020, 1028 (9th Cir.

---

[7] The Hobbs Act uses the word "fear" rather than "intimidation," but this was a distinction without a difference in *Howard*. 650 Fed. App'x. at 468 ("intimidation" means willfully "to take, or attempt to take, in such a way that would put an ordinary, reasonable person *in fear of bodily harm*").

14

2000) (armed bank robbery qualifies as a crime of violence under § 924(c)'s force clause).[8] The Ninth Circuit has repeatedly held that putting a victim in "fear of injury" and using "intimidation" satisfies the violent physical force required under § 924(c)'s force clause. *Howard*, 650 Fed. App'x at 468; *see also United States v. Watson*, 881 F.3d 782, 785–86 (9th Cir.) (bank robbery by intimidation meets the *Johnson* standard and *mens rea* requirement and, thus, qualifies as a crime of violence under § 924(c)'s force clause), *cert. denied*, 139 S. Ct. 203 (2018); *United States v. Gutierrez*, 876 F.3d 1254, 1257 (9th Cir. 2017) ("Bank robbery by intimidation … requires at least an implicit threat to use the type of violent physical force necessary to meet the *Johnson* standard."), *cert. denied*, 138 S. Ct. 1602 (2018).

Although the *Howard* opinion is unpublished and not precedential, the court is persuaded that the reasoning of *Castleman*, *Selfa*, *Wright*, *Gutierrez*, and *Watson* apply to Hobbs Act robbery. *See, e.g.*, *United States v. Givens*, 268 F. Supp. 3d 1108, 1121–24 (D. Nev. 2018) (collecting cases from the District of Nevada and holding that Hobbs Act robbery is a crime of violence under § 924(c)'s force clause); *Smith*, 215 F. Supp. 3d at 1033–34 (same). Fear of injury is sufficient to satisfy § 924(c)'s force clause.

In addition, Hobbs Act robbery requires *violent* physical force for conviction, not *de minimis* force. Brodigan's Motion argues that common-law robbery includes uses of de minimis force and the degree of violence is immaterial so long as it is enough to overcome the victim's resistance and transfer property to the robber. Mot. at 12. This argument glosses over a key point: it acknowledges that the force must be "sufficient to overcome resistance." *Id*. (citing 77 Corpus Juris Secundum, John A. Glenn, et al., Robbery § 23). The caselaw requiring "force sufficient to overcome resistance" narrows the range of conduct to exclude slight or offensive touching. *Johnson I* held that physical force is violent force, *i.e.*, "force capable of causing physical pain or injury to another person," 559 U.S. at 140, but it did not require "force capable of inflicting 'serious' bodily injury." *See Castleman*, 134 S. Ct. at 1417. *Johnson I* and *Castleman* foreclose Brodigan's arguments.

---

[8] The Ninth Circuit has acknowledged that *Selfa* and *Wright* remain good law. *United States v. Gutierrez*, 876 F.3d 1254, 1257 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1602 (2018); *United States v. Cross*, 691 Fed. App'x 312, 313 (9th Cir. 2017).

In the absence of explicit statutory text expanding generic robbery to any degree of force used, defendants must identify a binding decision interpreting the statute in the manner they suggest. *See, e.g.*, *Moncrieffe*, 569 U.S. at 191 (noting that the categorical approach's focus on the minimum conduct criminalized by a statute "is not an invitation to apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime' ") (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)). Mr. Brodigan relies heavily on legal treatises and different state and federal robbery statutes to support his position but does not cite binding case law, or even persuasive authority, showing actual convictions for Hobbs Act robbery for using or threatening to use nominal force. Every federal appeals court to address this issue has determined that Hobbs Act robbery qualifies as a crime of violence under § 924(c) based on its elements. *See* Resp. at 8–9 (collecting cases). Brodigan's arguments do not present a realistic probability that de minimis force would support a Hobbs Act robbery conviction. *See Smith*, 215 F. Supp. 3d at 1033–34 (noting that the Hobbs Act's "robbery definition is based on the traditional definition of robbery, which requires an intentional taking through the use of force or violence").

Accordingly,

**IT IS RECOMMENDED** that Brodigan's Motion to Dismiss Counts Three, Five, and Seven of the Indictment (ECF No. 98) be **DENIED**.

DATED this 17th day of December 2018.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

16